## Commonwealth v. Stewart

*Paul F. Mowrer*, for petitioner.

*George W. Teets, Stenger Diehl*, and *Blake E. Martin*, for respondents.

DEPUY, P. J., February 27, 1964.—On July 19, 1963, the Commonwealth of Pennsylvania, Department of Public Welfare, petitioned this court for an order directing the prothonotary to enter judgment in the name of the Treasurer of Franklin County to the use of the Commonwealth of Pennsylvania, Department of Public Welfare, against Robert Stewart and Waldo Stewart in the amount of $1,163.74 to reimburse the State for assistance benefits paid some years ago to Charles A. and/or Esther M. Buchanan, husband and wife.

We granted a rule on Charles A. Buchanan, Esther M. Buchanan, Robert Stewart, Waldo Stewart and Gideon T. Hartman, Treasurer of Franklin County, to show cause why the order prayed for should not be made.

An answer to the rule was filed on behalf of Charles A. Buchanan, of the county treasurer, and of Robert Stewart and Waldo Stewart, and not by any of the others served.

On December 10, 1963, and on December 18, 1963, hearings were held on the petition, rule and answer. The only witness heard was Charles A. Buchanan.

From the hearing record we make the following

### Findings of Fact

1. Charles A. Buchanan and Esther M. Buchanan became husband and wife by their marriage in 1942.

2. By deed dated January 25, 1945, and recorded among the deed records of Franklin County, Pa., in deed book, vol. 330, p. 282, John Shanabrough, single, conveyed to Charles A. Buchanan and Esther M. Buchanan, his wife, of Altoona, Pa., two tracts of real estate situated in Amberson Valley, Fannett Township, Franklin County, Pa. Tract no. 1 of said real estate contained 63 acres, 73 perches, more or less, and tract no. 2 contained 68 acres, 26 perches.

3. Neither Charles A. Buchanan nor his wife, Esther M. Buchanan, ever lived on the real estate described in finding of fact no. 2 above.

4. Said real estate was sold at Franklin County Treasurer's tax sale on April 28, 1960, for delinquent taxes, interest and costs to Robert and Waldo Stewart of Dry and Spring Run, Pa., for the sum of $1,650.

5. Of the said purchase price of $1,650, $1,163.74 represented the overbid above the tax, interest, costs and 25 percent of the purchase price which was required to be paid.

6. On May 9, 1960, the Treasurer of Franklin County, Pa., made his return of sale to the court, which sale was confirmed 60 days thereafter.

7. On July 11, 1960, the purchasers Stewart made and delivered to the Treasurer of Franklin County, Pa., for the use of the owner or owners of said real estate, their heirs, assigns or legal representatives, a bond for the surplus purchase money as aforesaid together with warrant of attorney to confess judgment annexed to the bond.

8. The county treasurer filed the bond in the office of the prothonotary of Franklin County, Pa., as required by law.

9. On June 12, 1953, Charles A. Buchanan signed a standard form Reimbursement Agreement of the Commonwealth of Pennsylvania, Department of Public Assistance, now Department of Public Welfare, hereinafter referred to as "the department", wherein, inter alia, he acknowledged that "My real and personal property is liable for the repayment of public assistance (except Blind Pension) granted to or to be granted to or for me and/or to or for my spouse and minor children on or after August 1, 1950."

10. On July 10, 1953, at a different place and not in the presence of her husband or with his knowledge, the said reimbursement agreement was signed by Esther M. Buchanan, wife of the said Charles A. Buchanan.

11. On September 8, 1953, the Commonwealth of Pennsylvania, Department of Public Assistance, entered of record in the prothonotary's office of Franklin County, Pa., to October term, 1953, no. 281, and revived on April 8, 1958, a judgment by confession on the reimbursement agreement above mentioned against the said Charles A. Buchanan and Esther M. Buchanan in the sum of $2,000.

12. Esther M. Buchanan, wife of Charles A. Buchanan, died on June 12, 1962.

13. On April 8, 1958, a suggestion of nonpayment, dated January 9, 1958, executed by Joseph L. Cohen, Deputy Attorney General, was filed in the office of the prothonotary of Franklin County, Pa., by the Commonwealth of Pennsylvania, Department of Public Assistance, against Charles A. Buchanan and Esther M. Buchanan, wherein it was stated as follows:

"Fifteen days have elapsed since notice of the filing of this suggestion has been sent by registered mail to

the above named defendant(s) at their last known address."

The address referred to was Box 215-C, R. D. 3, Altoona, Pa.

14. From testimony presented at the hearing, Charles A. Buchanan was living in 1958 at said Altoona address, but he denied that he received the registered mail notice.

15. From January 5, 1946, to September 29, 1953, total public assistance benefits in the amount of $8,-507.05 were paid by the Commonwealth to Esther M. Buchanan or to Charles A. Buchanan. In addition, the department paid out $13.25 in costs. $37.20 was recovered in payments from the Buchanans, leaving a balance due the Commonwealth of $8,483.10.

16. Of the total assistance granted, $90.20 was paid to Charles A. Buchanan from July 1, 1953, to September 29, 1953. The assistance benefits granted to Esther M. Buchanan during her lifetime aggregated a sum greatly in excess of the amount of the surplus bond furnished by purchasers at the treasurer's tax sale, against which bond Charles A. Buchanan has made claim in the present proceeding.

17. From August 1, 1950, the date referred to in the aforementioned reimbursement agreement, to September 29, 1953, over $6,598.30 in assistance was paid by the Department to the Buchanans.

18. Charles A. Buchanan and Esther M. Buchanan, married in 1942, were never divorced. Esther M. Buchanan left her husband during the latter part of 1945, and thereafter made her home with her aged and ailing father, whom she cared for.

19. Esther M. Buchanan had left her husband, Charles A. Buchanan, several times earlier without his consent and without reasonable cause. In late 1945, she deserted him wilfully and maliciously and never returned.

20. Esther M. Buchanan never sought or obtained an order of support against her said husband.

21. On June 12, 1953, when Charles A. Buchanan applied for assistance for himself and signed the standard form reimbursement agreement of the department, he did so because he was unemployed and in need, and without any knowledge or intention that the department would later, on July 10, 1953, obtain the signature of his deserting wife to the same document and would grant assistance benefits to her on the contention that both spouses had made themselves liable for assistance extended by the department to Mrs. Buchanan, and would attempt by means of the "Agreement" to impose a lien for the total amount of said assistance benefits against real estate owned by the parties by the entireties.

### *Conclusions of Law*

1. Esther M. Buchanan willfully and maliciously deserted her husband, Charles A. Buchanan, in the fall of 1945, and never thereafter resided with him in the relation of husband and wife.

2. The execution of the reimbursement agreement by Charles A. Buchanan on June 12, 1953, and by his deserting wife, Esther M. Buchanan on July 10, 1953, did not amount in law or fact to a joint act by the spouses.

3. Charles A. Buchanan did not become liable to the Commonwealth by virtue of the reimbursement agreement for any amounts of assistance that were granted to his wife, Esther M. Buchanan, who had deserted him.

4. Real estate owned by Charles A. Buchanan and his wife, Esther M. Buchanan, by the entireties, was liable by virtue of the statute for assistance benefits granted to either Charles A. Buchanan or to his wife, or both.

*Discussion*

The liability which the State has here sought to impose upon Buchanan and his wife, arising from the granting of assistance benefits in the amount of $8,-382.90 to her during the years January 5, 1946, to September 9, 1953, finds its legal basis, according to the Commonwealth's argument, in either or both of two sources:

1. An obligation imposed by contract, based on the fact that both husband and wife signed a "Reimbursement Agreement" for $2,000 in favor of the Commonwealth, which contract was by confession reduced to judgment and a lien thus imposed on realty owned by the spouses by entireties;

2. An obligation imposed directly by force of statute on real, or personal, property owned by a recipient of assistance, at the time the assistance is paid out, such obligation embracing also any amount of assistance paid to a spouse of the property owner, even when the property stands in the name of one spouse, not actually receiving the assistance, alone. In the present case the property was owned by both spouses by the entireties.

In our case, the husband Buchanan seeks to remove the entireties realty from any liability for benefits given by the State to his deserting wife, on the reasoning that:

a. As to the alleged contract, it cannot be regarded as legally valid, in that its execution was not a "joint act" of the spouses;

b. As to the liability assertedly imposed by the support statute, the court in exercise of common sense and fairness must read into the statute an unexpressed exception in this situation where the spouse who received the assistance, had, before benefits were granted, deserted the other land-owning spouse, i.e., had given him ground for divorce.

On the first question as to contract liability of Charles A. Buchanan for assistance given by the State to his deserting wife, we are of opinion that under the facts no joint act did occur. When Buchanan signed the reimbursement agreement for the State officer we think he did so only for assistance for himself and that he had no knowledge that the State intended to obtain the signature of his deserting wife in another city 28 days later. Nor did he have any knowledge of or intention that the State would extend thousands of dollars of assistance to her, on the strength of a joint obligation against the entireties property.

On the second question as to reimbursement liability imposed directly by statute, Buchanan asks us by judicial fiat to engraft language upon the terms of the statute.

The Support Law of June 24, 1937, P. L. 2045, sec. 4, as amended, 62 PS §1974, provides:

"(a) Except as limited by subsection (c) hereof, the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted." (Subsection (c) refers to medical assistance.)

It has been held that ownership of property by a recipient of assistance or by a nonrecipient spouse, during the period assistance is granted, is the sole criterion on which reimbursement liability is based. The liability is statutory and does not rest on whether a husband and wife are living together at the time assistance payments are made to or for the benefit of one spouse.

Furthermore, the real estate is not by the statute relieved of liability because one spouse has ground for divorce against the other but neglects to obtain a divorce.

The phraseology of The Support Law is unequivocal. The property of the spouse is made liable for reimbursement. It is ancient law that when spouses are seized of title to real estate, each owns an interest in the entirety of the realty. The fact that Esther M. Buchanan may have deserted her husband, Charles A. Buchanan, does not make her any less his spouse. Such relationship continues until the marriage has been legally terminated by divorce or by the death of one.

If the legislature had intended the property of a spouse to be relieved from reimbursement to a public agency for payments made for the maintenance of the other spouse, if they were separated, it could have so stated in the act. Since The Support Law contains no statement of this nature, no such defense exists.

The real estate in this case was owned by Mr. and Mrs. Buchanan as tenants by entireties and in legal concept each spouse owned the whole. Therefore, the statute makes the property liable if a lien is obtained by timely proceedings for reimbursement of all assistance that was granted to either spouse.

On the specific question before us on the reimbursement agreement, we conclude that the State's judgment based on that agreement is not valid or enforceable against the real estate owned by the entireties.

A perspective can be gained on the present problem if we take a look at what would happen under the law if husband and wife, owning entireties real estate, were asked to sign a promissory judgment note, at a time when they were estranged, and where the promisee, perhaps a finance company, had obtained the signature of each spouse at a different time and place, and without the husband knowing that it was contem-

plated to obtain his wife's signature, or to lend her money later in reliance on both signatures. In such situation it could hardly be claimed that signing of the note by both obligors constituted a "joint act", or that the husband was liable for moneys given to the wife, unknown to him, or that property owned by entireties would be liable for payment of a judgment founded upon such a note.

Now, February 27, 1964, it is ordered that Charles A. Buchanan is found to have a claim to the fund represented by the surplus bond filed in the above cause in connection with the treasurer's sale of April 28, 1960. The petition of the Commonwealth for an order directing the prothonotary to enter judgment in the name of the Treasurer of Franklin County to the use of the Commonwealth of Pennsylvania, Department of Public Welfare, against Robert Stewart and Waldo Stewart, is dismissed at the cost of the Commonwealth. Exception granted to all parties.